Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
MORRIS LAW FIRM, APC
401 West A Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| DeETTA WILLIAMS,<br><br>                    Plaintiff,<br><br>     v.<br><br>MICHAEL EWELL, individually,<br>KIMBERLY HUGHES, individually,<br>AND DOES 1 through 50, inclusive,<br><br>                    Defendants. | Case No. 16-cv-01589-ODW-DTB<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1. 42 U.S.C. § 1983 – Cruel and Unusual Punishment**<br>**2. 42 U.S.C. § 1983 – Policies, Customs and Practices**<br>**3. 42 U.S.C. § 1983 – Failure to Train**<br>**4. 42 U.S.C. § 1983 – Ratification** |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

II. JURISDICTION ........................................................................................ 3

III. PARTIES ................................................................................................. 3

IV. FACTS RELEVANT TO ALL COUNTS ............................................... 5

FIRST CAUSE OF ACTION 42 U.S.C Section 1983 – 8th Amendment Cruel
and Unusual Punishment ..................................................................... 16

SECOND CAUSE OF ACTION 42 U.S.C Section 1983 – 8th Amendment
Cruel and Unusual Punishment ........................................................ 18

THIRD CAUSE OF ACTION 42 U.S.C Section 1983 – 8th Amendment Cruel
and Unusual Punishment ..................................................................... 22

FOURTH CAUSE OF ACTION 42 U.S.C Section 1983 – 8th Amendment
Cruel and Unusual Punishment ........................................................ 24

PRAYER FOR RELIEF ........................................................................ 26

REQUEST FOR JURY ........................................................................ 26

# I.

## INTRODUCTION

1.     DeEtta Williams (hereinafter "Plaintiff" or "Dee") brings this case to defend her Eighth Amendment right to be free from cruel and unusual punishment as a prisoner, who until recently, was incarcerated at California Institution for Women (hereinafter "CIW").

2.     In a plan that was preconceived, deliberate and methodical, Dee – over a span of six (6) months – was horrifically and repeatedly raped and sexually assaulted, on a daily basis, by California Department of Corrections and Rehabilitation (hereinafter "CDC") Officer Michael Ewell.

3.     Officer Ewell had a history of sexually assaulting women, a history well known to CIW'S Warden, Kimberly Hughes as well as other supervisory staff, whose names are not currently known to Plaintiff and therefore are sued herein as Does 1-50 (Hereinafter collectively referred to as "Supervisory Staff"). In September of 2013, after Officer Ewell had sexually assaulted a fellow CDC officer, he was inexplicably transferred to CIW – an all woman's prison – and then assigned his own unit to supervise.  By virtue of this assignment, Officer Ewell was given unfettered access and power over the female prisoners in his unit. Supervisory Staff assigned and entrusted Officer Ewell to supervise his own unit only two (2) months after knowing he had sexually assaulted his co-worker.  Based on information and belief, Officer Ewell impregnated another CIW prisoner in 2013.  Prior to Dee's sexual assaults, Supervisory Staff became aware of this information yet failed to take action against Officer Ewell.

4.     Warden Hughes was not a typical warden.  She was indispensably involved in the day to day operations at CIW.  She was always on the yard, constantly exposed to and aware of the rampant misconduct that took place at CIW – mainly on the part of CDC officers.  There is a custom at CIW for officers to facilitate prisoners' violation of the law, generally by smuggling in contraband for

FIRST AMENDED COMPLAINT                    CASE NO. 16-cv-01589-ODW-DTB

the inmates to sell.  CDC officers would then take advantage of this knowledge to sexually assault prisoners and then threaten exposure if the prisoner disclosed the officers' sexual misconduct.  The pervasive nature of this misconduct directly lead to an overwhelming number of suicides at CIW.[1] Despite the officers' attempts at discretion, Warden Hughes, as well as Supervisory Staff, knew of this conduct and turned a blind eye.

5.     Supervisory Staff is not only accountable for ratifying Officer Ewell's sexual assaults, they are also accountable for facilitating his sexual assaults. The Supervisory Staff's indifference was a substantial factor leading to Dee's constitutional violations. For instance,  Warden Hughes, and other Supervising Staff, assigned Officer Ewell  to his own unit knowing there is no surveillance system at CIW; not one camera. Nor did they implement a requirement to maintain movement or tracking logs.  In short, Supervisory Staff failed to procure any internal safeguards to account for Officer Ewell's contact with CIW prisoners. Warden Hughes knowingly put her prisoners in danger by leaving them in the control of a known sexual assailant that she had no way of monitoring or supervising.  As a direct result of her lack of oversight, officers (including Officer Ewell) had unfettered discretion to treat prisoners as they saw fit.  As detailed below, Warden Hughes, and Supervisory Staff, promoted an atmosphere of indifference thereby enhancing the very risk that sexual incidents would occur at CIW.  A testament to this allegation is the following: Officer Ewell is believed to be one of four CDC officers that sexually assaulted prisoners at CIW during the last months of Dee's sentence.  The Supervisory Staff's deliberate indifference to this ongoing problem was a substantial factor in the constitutional violation sustained by Dee.

/ / /

---

[1] In 2014, the suicide rate at CIW was eight times the national average for female prisons.

2

6.     Officer Ewell was terminated in May of 2015.  Warden Hughes "resigned" under duress in July of 2016.  Currently, Dee uses her tragedy as a vehicle to advocate for prisoners' rights and fair treatment as a motivational speaker reaching out to newly released parolees.

## II.

## JURISDICTION

7.     This is a lawsuit for money damages and is brought pursuant to 42 U.S.C. section 1983, *et seq.*, and the Eighth Amendment to the United States Constitution, on behalf of Dee Williams for Officer Ewell's sexual acts amounting to cruel and unusual punishment against Defendants Ewell, Hughes, and other as yet unnamed correctional officers and Supervisory Staff.  Jurisdiction is founded on 28 U.S.C. sections 1331 and 1343 and the aforementioned statutory and Constitutional provisions.

8.     Venue is proper in the Central District Eastern Division of California because the acts or omissions which form the basis of Dee's claims occurred at CIW which is located in the Central District Eastern Division of California.

## III.

## PARTIES

9.     This action is brought by Plaintiff, DeEtta Williams, a resident of San Diego, California and a prisoner at CIW during all relevant times mentioned herein.

10.    Warden Hughes was, and at all times mentioned herein, the warden at CIW.  She is responsible for enforcing the laws and protecting the welfare of prisoners incarcerated in CIW.  She is also responsible for overseeing the operation, management, and supervision of CIW and its CDC officers.

11.    Officer Ewell was a CDC officer at CIW during all relevant times mentioned herein.  The sexual acts forcibly performed at CIW were done in his course and scope of employment as a CDC officer.

/ / /

3

FIRST AMENDED COMPLAINT          CASE NO. 16-cv-01589-ODW-DTB

12.   The names of the other individual officers involved are currently unknown to Plaintiff.  As such, these individuals are sued herein as DOES 1 through 50.

13.   The names of the individual Corrections Officers and Supervisory Staff who were responsible for the placement and assignment of Officer Ewell after learning of his sexual misconduct are currently unknown. Supervisory Staff is also responsible for the care and custody of Dee, and were responsible for the implementation of policies and procedures designed to insure that the conditions of confinement, are currently unknown to Plaintiff.  As such, these individuals are sued herein as DOES 1 through 50.

14.   The true names and capacities whether individual, corporate, associate or otherwise, of Defendants named herein as DOES 1 through 50 are unknown to Plaintiff, who therefore sue said defendants by said fictitious names.  Plaintiff will amend this complaint to show said Defendants' true names and capacities when the same have been ascertained.  Plaintiff is informed and believes and thereon alleges that all Defendants sued herein as DOES 1 through 50 are in some manner responsible for the acts and injuries alleged herein.

15.   At all times mentioned herein Defendants and unknown medical staff and correctional officers named herein as DOES 1 through 50 were employees and/or independent contractors of Defendant CDC and in doing the acts hereinafter described acted within the course and scope of their employment.  The acts of all Defendants and each of them were also done under the color and pretense of the statutes, ordinances, and regulations of the State of California.

16.   In committing the acts and/or omissions alleged herein, all Defendants acted under color of authority and/or under color of law.  Plaintiff sues all public employees named as Defendants in their individual capacities.

/ / /

/ / /

4

17.     The first allegation forming the basis for this complaint accrued on January 22, 2014.  Pursuant to California Code of Civil Procedure sections 335.1 and 350.1, Dee has timely brought this complaint for damages.

18.     Further, because Dee filed this complaint as a free citizen, and not as a prisoner, she is not bound by the relevant requirements set forth in the PLRA.

## IV.

## FACTS RELEVANT TO ALL COUNTS

19.     Dee is a mother to four children.  She has two twin sons and a daughter, all of which are currently obtaining college degrees.  Since her release, Dee, and her domestic partner of twenty (20) years, reside in San Diego and raise their special needs child, Denorvis.

20.     In 1997 Dee was incarcerated for a marijuana deal gone wrong, in which she facilitated the meeting of a buyer and seller that she had previously known.  Unbeknownst to Dee, the deal went terribly wrong resulting in the death of one of the participants.  Dee called 911 to report the shooting; she then turned herself in.  Dee was sentenced to eighteen (18) years for aiding and abetting voluntary manslaughter.

21.     Throughout her incarceration at various institutions, Dee was a model prisoner.  In 2004 she was transferred to CIW.[2]  Dee was housed in CIW's general population for six (6) years until she requested protective custody in August of 2010 due to bullying and stealing by other inmates.  Dee was housed in Administrative Segregation (hereinafter "Ad-Seg").

22.     In late 2010, while in Ad-Seg, Dee was involved in cell fight.  All participants were given a term of three (3) years to be served in Solitary Housing Unit (hereinafter "SHU").  Dee had no issues in SHU until September of 2013, when she first encountered Officer Ewell.

/ / /

[2] While incarcerated at CIW, Dee was known as "Jamaica" and "DeEtta Kelly."

5

FIRST AMENDED COMPLAINT                CASE NO. 16-cv-01589-ODW-DTB

23.     Officer Ewell was transferred to CIW in September of 2013, after sexually assaulting a female corrections officer at California Institution for Men.

24.     At CIW, Officer Ewell regularly worked first watch from 10 p.m. – 6 a.m., exclusively in SHU.  Almost immediately, Officer Ewell paid special attention to Dee.  At first, he would make inappropriate comments; repeatedly commenting on Dee's "heart shaped butt" and would make comments referencing Dee's "need for man" rather than a woman.

25.     His comments then transformed into passive actions.  During Dee's showers, Officer Ewell would purposefully peek over the walls and make comments referencing Dee's age and sexuality.  Officer Ewell would tell Dee that he thought of her often and envisioned her in her underwear when he did.

26.     Due to his power and position, and the overall culture of sexual abuse at CIW, Dee tried to remain unaffected, knowing that it could be worse.  In November of 2013, Officer Ewell asked Dee why she was still in SHU.  Dee stated her SHU term was completed, but one of the inmates involved in the 2010 cell fight told CIW authorities that she was afraid of her; thus, she [Dee] was stuck in SHU.  Officer Ewell asked "what's her name?" and stated "I'll get her to come around."

27.     Less than a month later, Dee was informed by her counselor that the inmate had recanted her feelings of fear and that Dee was going to be released from SHU.

28.     On December 5, 2013, immediately after being released from SHU, Dee went to "committee."  Committee is where released SHU inmates are given housing and job assignments.  Dee was housed in the Baunerberg unit and placed on a waiting list for a cook or clerk assignment.  The Baunerberg unit was notorious for being an unclean unit which housed extremely violent and new prisoners.

29.     Within the next three days, Officer Ewell approached Dee in the Baunerberg unit and asked her "How does it feel to be free?" and then stated, "I told you I was going to get you out."  Officer Ewell then told Dee that he was going

6

to be taking over the "Harrison" unit and said "I want to have you pulled and housed in that unit."  Dee remained quiet during this interaction.

30.     Despite Dee's concerns regarding Officer Ewell's inappropriate comments, the Harrison unit was known as the "honor dorm" at CIW.  Harrison housed the "lifers," those inmates who had been institutionalized for years and serving near to life sentences; these inmates are less violent and less likely to be gang affiliated then the prisoners housed in the other units like Baunerberg.  The Harrison unit was exceptionally clean and safer.  It was also the first unit to be inspected; meaning, the prisoners housed in Harrison are the first prisoners allowed in the commissary every morning.  Further, due to prisoner demographic in the Harrison unit, there was less fighting and stealing.  Though Dee was interested in being housed in the honor dorm, prisoners have no right to choose their housing assignments.

31.     In January of 2014, Dee received her "bed move" to the Harrison unit. Dee was re-housed immediately.  The next day, Officer Ewell, working second watch in the Harrison unit, from 6 a.m. – 2 p.m., told Dee, "I told you I'd get you moved over here."  Dee said "good looking out, now all I need is my job assignment to come through."  Officer Ewell then said "I've got a porter position."

32.     The next day, Officer Ewell approached Dee, handed her the filled out porter position paperwork and told Dee to walk it over to assignment and that he would call the assignment officer to ensure her porter assignment went through. Though Dee was already awaiting a job assignment from committee, the porter position was a coveted position in the prison, the porter is the only position that keeps the prisoner in the unit to maintain simple cleanliness of the common rooms (hallways, day room and "officer quarters") of the housing unit.  There are four porters for each unit.  The very next day, Dee received her "ducket list" assigning her the position of porter in the Harrison unit.

/ / /

33.     Each of the four porters were assigned different areas in the unit to clean.  Officer Ewell ensured that Dee would be exclusively responsible for cleaning the "officers' quarters."  The officers' quarters consisted of a small office and inside the office is a small closet-sized bathroom.  Dee later learned the Harrison unit did not have an available porter position and that Officer Ewell went out of his way to re-assign one of the current porters to another position in an effort to make room for Dee.  Dee's new porter position in the officers' quarters ensured Officer Ewell would have isolated access to Dee.

34.     Acting outside policy, Officer Ewell began to "pop" Dee out of her cell at 5:30/5:45 a.m., so that she could clean the officers' quarters.  Popping Dee out of her cell before 6:00 a.m. ensured Dee was the only inmate out of her cell roaming in the unit and that no other officer would be on shift in the unit as shift break wasn't until 6:00 a.m.  In short, popping Dee out of her cell early ensured they would be alone in the unit for fifteen to thirty minutes every morning.

35.     For the first two weeks, Officer Ewell would pop Dee out early and watch her as she cleaned the officers' quarters.  He would talk to her about his time in the secret service and SWAT, his marital issues and go as far as showing Dee pictures of his wife.  During this time, Dee would talk about missing her children and wife back home.  Over the two weeks, this began to anger Officer Ewell and he would tell Dee, "I know you want a real man."  During these first two weeks, Officer Ewell would constantly grope Dee and ask her to kiss him.  Dee repeatedly refused.

36.     Soon thereafter, Officer Ewell's passive advancements evolved into aggressive and physical advancements.  On January 22, 2014, Officer Ewell popped Dee out of her cell early and told her to clean the bathroom.  As Dee was bent-over cleaning the toilet in the officers' bathroom, Officer Ewell approached Dee from behind; he aggressively grabbed her waist and placed his penis against her backside.  He stayed rested up against her and demanded that she give him a kiss.

8

Again, she refused.  Officer Ewell grabbed Dee's waist even harder and threatened to send her back to SHU; he then said, "One way or another, I'm gonna get a kiss." Being fearful of being sent back to SHU or worse, Dee gave Officer Ewell a kiss and left the bathroom.

37.   Similar conduct continued daily.

38.   On February 14, 2014, when Dee was getting ready to shower, Officer Ewell called Dee into the officers' bathroom.  When Dee arrived Officer Ewell cornered her.  He grabbed Dee's leg and forcibly placed it on the toilet.  Dee tried to back away but Officer Ewell had cornered her against the wall and toilet; he grabbed her by her throat and began to choke her.  Officer Ewell pushed Dee's panties to the side and began giving Dee oral sex.  Dee continued to struggle to get away, however Officer Ewell's grip was too strong; Officer Ewell continued to choke Dee.  As Officer Ewell was performing oral sex on Dee, he pulled out his penis and started masturbating.  Once he finished, he walked out of the officer's bathroom.  Dee got in the shower and cried.

39.   After this first incident of rape, Officer Ewell became more hostile and aggressive towards Dee.  When he would see her in the unit he was constantly remove her from the common areas and force himself on her.  He would grope her, and demand she kiss him and then threatened to send her sent back to SHU or write her up if she told anybody about his advancements.  Due to his position and power, Officer Ewell knew if he threatened to write Dee up, her incarceration would be extended.  With a year remaining on her sentence, Dee stayed silent for fear of having her eighteen (18) year sentence extended.

40.   Within the next week, Officer Ewell gave Dee a cell phone for "doing a good job."  He used the phone to communicate with her when he was off duty. Despite knowing it was illegal, Dee used the phone to talk to her domestic partner and children.

/ / /

FIRST AMENDED COMPLAINT                    CASE NO. 16-cv-01589-ODW-DTB

41.   A couple of days later, Officer Ewell popped Dee out of her cell and stated "you know I got you that phone, it's time to make good." Officer Ewell then gave a physical indication that he wanted Dee to perform oral sex on him. Dee refused and started to argue with Officer Ewell. Officer Ewell grabbed Dee's neck and threatened her by stating "If you don't do what I say there's going to be an issue." He then ordered her to go inside the officers' bathroom.

42.   Officer Ewell threw Dee in the corner of the bathroom between the toilet and the wall. He pulled out his penis and Dee stated "I'll go back to SHU before I do that." Officer Ewell became angry; he grabbed Dee by the neck and forced her head down. As he was forcing Dee to perform oral sex, Officer Ewell told Dee "take it, then spit it in the sink." When he finished, Officer Ewell pulled up his pants, smiled and said "I'll see you tomorrow."

43.   After this incident, Officer Ewell started to make comments regarding Dee's children. He would tell Dee that he planned trips to the cities that Dee's children were going to school in. He would tell Dee that he was going to pay them a visit. Dee took these comments as a threats to her children; as such she was constantly fearful of Officer Ewell. Dee felt helpless.

44.   Around this time, Officer Ewell was promoted to acting sergeant. As such, Officer Ewell was no longer assigned to the Harrison unit.

45.   In April 2014, Dee's celly was transferred to a different institution to await a court proceeding. The first night Dee was alone Officer Ewell, at approximately 12:30 a.m., knocked on Dee's cell and told her he's coming back for her. An hour later, Officer Ewell returned and ordered Dee to the officers' quarters. Dee walked towards the officers' bathroom and Officer Ewell followed. He threw Dee to the ground and said "get the fuck up and take your clothes off." Dee responded "No, you're sick." Officer Ewell said "I'm not worried about what you want, I know you love your family." Officer Ewell then said, "Get the fuck up, sit / / /

FIRST AMENDED COMPLAINT          CASE NO. 16-cv-01589-ODW-DTB

1   on the toilet and don't question me." Dee was fearful not just of being sent to SHU,

2   but for her and her family's life.

3       46.    Officer Ewell walked up to Dee, unzipped his pants, pulled out his

4   penis, sat on the toilet and demanded Dee sit on top of him.  Officer Ewell

5   penetrated Dee but became frustrated when his penis would not become erect.  He

6   became angry with Dee and started to choke her.  He then slapped her numerous

7   times and told her to stay seated on top of him but ordered her to manipulate his

8   penis to facilitate an erection; Officer Ewell repeated "get me hard, get me hard."

9   During this sexual assault, Officer Ewell had a tight grip on the back of Dee's neck

10  and throat.  After forcibly penetrating Dee, he ordered her to return to her cell.

11      47.    The next day, Dee was given a new celly.  Later that day the celly

12  accused Dee of physically assaulting her.  Dee was removed from her cell and

13  housed in Ad-Seg.  Though Dee was eventually cleared of this accusation, during

14  CIW's investigation, Dee was removed from the Harrison unit and remained

15  housed in Ad-Seg.  Given the timing, Officer Ewell assumed Dee "snitched" on

16  him.

17      48.    Due to her placement in Ad-Seg, Officer Ewell did not have

18  immediate access to Dee.  On at least two occasions, using his position as acting

19  sergeant, Officer Ewell ordered at least two other CDC officers to report to Ad-Seg

20  to speak with Dee.  Both officers knew that Officer Ewell had repeatedly forced

21  himself on Dee and both officers told Dee that Officer Ewell sent them to ask why

22  she was being housed in Ad-Seg.  She told both officers that her new celly went

23  crazy and accused Dee of hitting her.

24      49.    Apparently, Officer Ewell continued to believe Dee had informed CIW

25  authorities that he had raped her; so, he went to Ad-Seg to talk to Dee himself.

26  Officer Ewell approached Dee's cell and asked "why are you really here?"  He

27  immediately told Dee "loose lips sink ships" and "I know people in high places, I'll

28  / / /

FIRST AMENDED COMPLAINT                    CASE NO. 16-cv-01589-ODW-DTB

1   know exactly what you say." Because Dee felt safer in Ad-Seg, she immediately
2   started to scream at the top of her lungs.  Officer Ewell left.

3       50.   Because of Dee's housing in Ad-Seg she rarely saw Officer Ewell.  It
4   took approximately two (2) months for CIW's Supervisory Staff to conclude its
5   investigation into the celly's allegations of battery.  CIW found Dee to be innocent
6   and found the celly to be mentally instable.  At this point, Dee was to be released
7   from Ad-Seg.  That same day Dee was sent to Committee to be assigned housing
8   and a job post.

9       51.   When Dee was sent to meet with the committee, which consisted of
10  Warden Hughes, assistant warden, one mental health professional, and a housing
11  officer, Dee was informed the investigation cleared her name and that she was
12  going to be housed back in general population.  Dee was immediately fearful that
13  she would be easily accessible to Officer Ewell again.  It was at this moment that
14  Dee had a mental breakdown.  When Warden Hughes asked Dee what was wrong,
15  Dee informed Warden Hughes that Officer Ewell had repeatedly raped her.

16      52.   As a result of Officer Ewell's actions, Dee had a mental breakdown.
17  She was severely depressed and suffered from loss of sleep and appetite.  As a
18  result she began losing her hair.  Dee lost over twenty pounds.  Since her meeting
19  with the committee, Dee was sent to the psychiatric unit and was not re-housed
20  until her release date on November 27, 2014.

21      53.   Because of his past and current sexual assaults, an investigation ensued
22  against Officer Ewell.  CIW authorities requested Dee participate in the
23  investigation.  Dee complied.  In March of 2015 Dee was asked to testify against
24  Officer Ewell in front of the State Personnel Board.

25      54.   As a result of the State Personnel Board hearing, Dee was recently
26  informed Officer Ewell was terminated from CDC in May of 2015.

27      55.   Officer Ewell's acts, as described above, were committed when he was
28  acting within the scope of his employment.  The rape and various sexual assaults

12

arose from the misuse of official authority as Officer Ewell was assigned and entrusted with a substantial degree of power over prisoners like Dee.  In short, the series of wrongful acts flowed from the very exercise of Officer Ewell's authority.

56.    Officer Ewell was acting in the scope of his employment when he 1) methodically facilitated Dee's release from SHU, 2) ensured Dee was to be housed in his unit by personally submitting a "bed move" order to the housing assignment officer despite not having the required medical need to be re-housed, 3) arranged to have another prisoner's job assignment revoked so that Dee could be assigned to the only position that would allow Officer Ewell to have isolated access to Dee, 4) gained compliance and a fear of punishment by supplying Dee with a cellular phone, 5) used his position as the sole guard on duty to take pictures of Dee while she was showering, 6) used his positon to repeatedly let Dee out of nightly lockdown earlier than permitted to sequester her in the officers' quarters in order to sexually assault her prior to any prisoners or guards being present in the unit, and 7) by using his status as acting sergeant to order other CDC officers to harass Dee in order to determine if she had told CIW authorities of Officer Ewell's sexual assaults.  During all of these occasions, Officer Ewell was on duty, in uniform, and armed.  But for his positon as a CDC officer, Officer Ewell would have been unsuccessful in accomplishing the means to access and isolate Dee.  He accomplished these sexual assaults by exploiting his power and authority over Dee; specifically by threatening to become violent, to send her back to SHU, or worse, to extend her charges if she didn't comply.

57.    Further, Warden Hughes, and other Supervisory Staff, are liable for Officer Ewell's conduct because they were explicitly on notice that Officer Ewell had a history of sexually assaulting women.  Officer Ewell was transferred in 2013 to CIW because he had sexually assaulted a female corrections officer when working at California Institute for Men.  At their direction Warden Hughes, and other Supervisory Staff,  knowing that Officer Ewell had a history of assaulting

FIRST AMENDED COMPLAINT                    CASE NO. 16-cv-01589-ODW-DTB

1   females, inexplicably assigned Officer Ewell his own unit; meaning, he would be

2   the only CDC officer on duty in that unit during nightly lockdown. They did this

3   knowing there was no surveillance or monitoring system in place to supervise

4   Officer Ewell's conduct.  Literally, not one camera or movement log.

5          58.     Further, during the investigation prior to Officer Ewell's termination,

6   Dee was informed that Officer Ewell impregnated another inmate prior to his

7   sexual assaults with Dee.  Based on information and belief, Officer Ewell has had

8   previous sexual assaults with other female inmates at CIW.  This was known by at

9   least two CDC officers as well as Warden Hughes, and other Supervisory Staff.

10  They took no action against Officer Ewell until it was too late, until he had raped at

11  least two other women.  Because Warden Hughes and other Supervisory Staff, were

12  on notice of Officer Ewell's previous sexual assaults, and deliberately turned a

13  blind eye to their duty and responsibly to supervise their officers and as well as to

14  protect prisoners, Warden Hughes and Supervisory Staff are liable for Dee's

15  constitutional violations.

16         59.     Moreover, CIW, by and through its Warden Hughes and Supervisory

17  Staff, has a custom and practice of permitting its officers to sexually assault its

18  female prisoners during the course and scope of their employment.  This is

19  especially so because CIW does not enforce its no contact rules. Based on

20  information and belief, there were at least three other CDC officers, at CIW,

21  sexually assaulting female prisoners during the time of Dee's own sexual assaults.

22  Warden Hughes and Supervisory Staff were aware of these assaults as this conduct

23  was known by several CDC officers, leading to a rampant rate of suicides which

24  sparked past and current federal investigations.

25         60.     However, CIW has no mandate, program, or incentive for other CDC

26  officers to inform CIW/CDC authorities of guard/prisoner rape.  Further, there are

27  no procedures for investigating on-going prison rapes by officers creating an

28  atmosphere of tolerance which enhances the risk that such incidents would occur.

14

FIRST AMENDED COMPLAINT              CASE NO. 16-cv-01589-ODW-DTB

1    There is no rehabilitation or training program for officers that have been found to

2    previously assault other women.  After findings of sexual assaults, there is no

3    mandatory requirement to take a "fitness-for-duty" exam that might have detected

4    continuing signs of stress and emotionally-related dysfunction which could have

5    prevented the horrific acts performed against Dee.  Warden Hughes and

6    Supervisory Staff have failed to implement these much needed protocols.

7        61.    Further, by and through their inactions, Warden Hughes and

8    Supervisory Staff, facilitated the horrific conduct performed by her officers.  First

9    and foremost, CIW is vacant of any camera or surveillance systems through-out the

10   facility.  There are no cameras overlooking common areas, hallways, officers'

11   quarters or residential quarters.  There are also zero internal controls requiring a log

12   to track prisoners once removed from their cells.  Thus, without a surveillance

13   system or a movement log, there is no oversight or accountability regarding

14   prisoner and officer interaction.  This gave Officer Ewell the unfettered ability to

15   roam around the unit, unlock Dee's cell, order her into the isolated officers'

16   quarters, then forcibly assault, orally copulate and penetrate Dee, all without other

17   prisoners, CDC officers or surveillance and tracking systems in place to capture his

18   conduct.

19       62.    Another substantial factor leading to Dee's sexual assaults is Warden

20   Hughes, and Supervising Staff's, understaffing at CIW.  Based on information and

21   belief, every unit houses approximately 175 female prisoners.  At the time of Dee's

22   assaults, Warden Hughes only assigned one officer to a unit.  During each sexual

23   assault, Officer Ewell waited until second watch to assault Dee.  This ensured that

24   he would be alone with Dee, because second watch only had one officer on duty

25   while the other inmates were in nightly lockdown.  Had Warden Hughes and other

26   Staff adequately staffed CIW, there would have been more than one guard on duty

27   and Dee would not have been left alone with Officer Ewell.

28   / / /

FIRST AMENDED COMPLAINT              CASE NO. 16-cv-01589-ODW-DTB

63.     Dee brings this case to hold those responsible for the senseless and foreseeable conduct perpetrated by Officer Ewell and permitted and ratified by Warden Hughes, Supervisory Staff, and any other DOE official.  Dee also holds these Defendants responsible for their lack of oversight, management, and policies.  This conduct violated Dee's Eighth Amendment right to be free from cruel and unusual punishment.  Further, Warden Hughes and DOE officials were explicitly aware that Officer Ewell had a history of sexually assaulting women; and, by assigning him his own female prisoners' unit, they created a substantial risk of serious harm to female prisoners.  Dee brings this case to put Officer Ewell, Warden Hughes and other Supervisory Staff on notice that she will not allow these deprivations to continue unchecked and will take the steps necessary to ensure her own rights, and the rights of other women currently incarcerated at CIW, are protected.

64.     Though Dee uses this experience to enlighten the lives of other parolees, she continues to struggle.  Dee seeks weekly counseling.  She was diagnosed with PTSD and is currently taking anxiety medicine.  She continues to suffer from nightmares and panic attacks.  She constantly lives in fear and attempts to stay inside her house as often as possible.

## FIRST CAUSE OF ACTION

### 42 U.S.C Section 1983 – 8th Amendment Cruel and Unusual Punishment

### [Against Officer Ewell, Warden Hughes and Does 1-50 –Deliberate Indifference]

65.     Plaintiff realleges and incorporates by reference all paragraphs stated above as though fully set forth herein.

66.     Prison officials are personally liable for the deprivation of an inmate's constitutional rights if they subject that inmate to cruel and unusual punishment.

67.     Dee has a firmly established right under the Eighth Amendment to be free from cruel and unusual punishment.  She also has a firm right under the

16

Fourteenth Amendment to be free from physical abuse, sexual assault, battery, and intentional infliction of emotional distress.  Lastly, Dee has a right to be free from the imposition of summary punishment inflicted without due process.

68.     Starting in and around January of 2014, in a plan that was preconceived, deliberate, and methodical, Dee – over a span of six (6) months – was horrifically and repeatedly raped and sexually assaulted, on a daily basis, by Officer Ewell.

69.     Officer Ewell knew that assault and rape were illegal and against CDC policy.  Despite this knowledge, and by and through his deliberate and repeated actions, Officer Ewell deprived Dee of her rights, privileges, and immunities under the Constitution of the United States.

70.     Warden Hughes, and other Supervising Staff, were personally aware of Officer Ewell previous sexual assaults.  One being a fellow CDC officer and the other being an inmate whom Officer Ewell impregnated prior to his assaults on Dee.  Warden Hughes failed to act and allowed him to have unfettered power and access to CIW prisoners.

71.     Further, they then personally assigned him his own unit, knowing there were zero internal safeguards to monitor Officer Ewell's contact with the prisoners. Warden Hughes and Supervisory Staff single-handedly created an environment to facilitate sexual assaults; Officer Ewell simply took advantage.

72.     As a direct and proximate result, Dee suffered physical trauma, emotional trauma, humiliation, fear, embarrassment, and anger.  She continues to suffer from nightmares, anxiety, and fear.

73.     She also requests punitive damages be awarded against Officer Ewell Warden Hughes, and other Supervisory Staff, for their unconscionable use of power to subject her to repeated instances of rape and assault.

/ / /

/ / /

17

**SECOND CAUSE OF ACTION**

**42 U.S.C Section 1983 – 8th Amendment Cruel and Unusual Punishment**

**[Against Warden Hughes in her Individual Capacity, and DOES 1-50 –**

**Policies, Customs and Practices]**

74.     Plaintiff realleges and incorporates by reference all paragraphs stated above as though fully set forth herein.

75.     Prisons and prison officials are liable for knowingly permitting inadequate prison conditions; as such, non-functioning and improperly placed cameras allowing for guards to have unlimited and unmonitored access to prisoners facilitating such assaults, establishes liability.

76.     By and through their indifference and inaction, Warden Hughes, and other Supervisory Staff, facilitated the horrific conduct performed by CDC officers. First and foremost, CIW is vacant of any camera or surveillance systems through-out the facility.  There are no cameras overlooking common areas, hallways, officers' quarters, or residential quarters.  Further, there are also zero internal controls requiring a log to track prisoners once removed from their cells.  Thus, without a surveillance system or a movement log, there is no oversight or accountability regarding guard/prisoner interaction.  This gave Officer Ewell the unfettered ability to roam around the unit, unlock Dee's cell, order her into the isolated officers' quarters, then forcibly assault, orally copulate, and penetrate Dee, all without other prisoners, CDC officers, or surveillance systems in place to capture his conduct.  The Supervising Staff's failure to implement adequate monitoring systems set in motion a series of events that lead to a custom and practice that facilitated sexual assaults.

77.     Prisons and prison officials may be liable for knowledge of past violations which it failed to remedy or supervise; liability can also be premised on past knowledge and acting in a way that is deliberately indifferent to a known risk of harm.

18

78.     Warden Hughes, and other Supervisory Staff, are liable for Officer Ewell's conduct because they were on notice that Officer Ewell had a history of sexually assaulting women.  Officer Ewell was transferred in 2013 to CIW because he had sexually assaulted a female corrections officer when working at California Institute for Men.  Knowing that Officer Ewell had a history of harassing females, Warden Hughes, and other Supervisory Staff, inexplicably assigned Officer Ewell his own unit; meaning, he would be the only CDC officer on duty in that unit during nightly lockdown.

79.     Further, during the investigation prior to Officer Ewell's termination, Dee was informed that Officer Ewell impregnated another inmate prior to his sexual assaults with Dee.  Based on information and belief, Officer Ewell has had previous sexual assaults with other female inmates at CIW all of which was known by Warden Hughes, and other Supervisory Staff.  At least two other CDC officers knew of Officer Ewell's past conduct.  However, Warden Hughes took no action against Officer Ewell until it was too late, until he had raped at least two other women.  Because Warden Hughes, and other Supervisory Staff, were on notice of Officer Ewell's previous sexual assaults, and then single handedly gave him the means and opportunity to sexually assault prisoners, they were deliberately indifferent to the likelihood of sexual assaults and is therefore liable for Dee's violations.

80.     Moreover, Warden Hughes, and other Supervisory Staff's, knowledge did not stop with Officer Ewell.  Additional evidence indicates that they were on notice of an overall pattern of sexual assaults by prison guards at CIW.  It is believed that at least three other CDC officers, at CIW, sexually assaulted female prisoners during the time of Dee's own sexual assaults.  Warden Hughes, and other Supervisory Staff, were aware of these assaults as this conduct was known by several CDC officers years prior to investigations.  Further, they became of aware of the on-going sexual assaults amidst the several suicides in 2014.  During the

19

1  court-ordered investigation it is believed Warden Hughes, and other Supervisory

2  Staff, were informed the suicides were the result of rampant sexual assaults by

3  officers.  They failed to take action.

4      81.   One factor leading to this custom of permissible sexual assaults is that

5  CIW has no mandate, program, or incentive for other CDC officers to inform

6  CIW/CDC authorities of guard/prisoner rape.  Further, there are no procedures for

7  investigating on-going prison rape by officers which creates an atmosphere of

8  tolerance enhancing the vey risk that such incidents would occur.  Also, there is no

9  rehabilitation or training program for officers that have been found to previously

10  assault other women.  After findings of sexual assaults, there is no mandatory

11  requirement to take a "fitness-for-duty" exam that might have detected continuing

12  signs of stress and emotionally-related dysfunction which could have prevented the

13  horrific acts performed against Dee.  Warden Hughes, and other Supervisory Staff,

14  failed to implement policies that would have prevented Dee's violation.

15      82.   Another substantial factor leading to Dee's sexual assaults is Warden

16  Hughes, and other Supervisory Staff's, understaffing of CIW.  Based on

17  information and belief, every unit houses approximately 175 female prisoners.  At

18  the time of Dee's assaults, they only assigned one officer to a unit.  During each

19  sexual assault, Officer Ewell waited until second watch to assault Dee.  This

20  ensured that he would be alone with Dee, because second watch only had one

21  officer on duty while the other inmates were in nightly lockdown.  Had CIW been

22  adequately staffed, there would have been more than one guard on duty and Dee

23  would not have been left alone with Officer Ewell.

24      83.   Finally, Warden Hughes, and other Supervisory Staff, are liable for

25  Officer Ewell's intentional and sadistic conduct because it was performed under the

26  course and scope of employment.

27      84.   As such, Officer Ewell was acting in the scope of his employment

28  when he, 1) methodically facilitated Dee's release from SHU by intimidating

20

another prisoner to recant her "enemy" status against Dee, 2) ensured Dee was to be housed in his unit by personally submitting a "bed move" order to the housing assignment officer despite not having the required medical need to be re-housed, 3) arranged to have another prisoner's job assignment revoked so that Dee could be assigned to the only position that would allow Officer Ewell to have isolated access to Dee, 4) gained compliance and a fear of punishment by supplying Dee with a cellular phone, 5) used his position as the sole guard on duty to take pictures of Dee while she was showering, 6) repeatedly let Dee out of nightly lockdown earlier than permitted to sequester her in the officers' quarters in order to sexually assault her prior to any prisoners or guards being present in the unit, and 7) by using his status as acting sergeant to order other CDC officers to harass Dee in order to determine if she had told CIW authorities of Officer Ewell's sexual assaults.  During all of these occasions, Officer Ewell was on duty, in uniform, and armed.  He accomplished these sexual assaults by exploiting his power and authority over Dee; specifically by threatening to become violent, to send her back to SHU, or worse, to extend her charges if she didn't comply.  Appallingly, he also threatened her children's safety if she were to tell anyone.  Because these acts were performed during the course and scope of employment, CDC is liable for Officer Ewell's conduct.

85.    As a direct and proximate result of Warden Hughes, and other Supervisory Staff's inaction, Dee suffered physical trauma, emotional trauma, humiliation, fear, embarrassment, and anger.  She continues to suffer from nightmares, anxiety, and fear.

86.    Dee also requests punitive damages be awarded against Warden Hughes, and other Supervisory Staff, for their unconscionable and deliberate indifference to the safety of their inmates; specifically, for being a substantial factor in the cause of Dee's rapes and assaults.

87.    It was the policy, custom and practice of Warden Hughes, and other Supervisory Staff, to allow the wanton infliction of pain and injury to prisoners.  It

was the policy, custom, and practice that was a substantial factor causing Dee's injuries; namely, her prior knowledge of Officer Ewell and other CDC officers' sexual assaults without properly investigating or remedying their conduct prior to reassigning them duties at CIW, her abject failure to monitor or track guard/prisoner contact, their obvious understaffing leading to an complete lack of oversight, and her inability to institute a program mandating non-assaulting officers to come forward with their knowledge of sexual misconduct.

88.    The injuries described herein were directly caused by these policies as these were so closely related to the injuries suffered as to be considered the "moving force" behind the injuries and deprivations alleged herein.

89.    In doing the acts and/or omissions herein alleged, the Defendants acted with malice and deliberate indifference which caused the unnecessary infliction of pain and physical injury on Plaintiff.  The actions and inactions of the Defendants resulted in the violation of his rights under the Eighth Amendment of the United States Constitution.

90.    The aforementioned acts and/or omissions of defendants in violating Plaintiff's civil rights were the direct and proximate result of policies, procedures, and practices/customs of Defendants as alleged herein.

**THIRD CAUSE OF ACTION**

**42 U.S.C Section 1983 – 8th Amendment Cruel and Unusual Punishment**

**[Against Warden Hughes in Her Individual Capacity, and DOES 1-50 –**

**Failure to Train and Supervise]**

91.    Plaintiff realleges and incorporates by reference all paragraphs stated above as though fully set forth herein.

92.    Prisons and prison officials are liable for failing to provide adequate training and supervision on the issue of sexual assault.

93.    Warden Hughes, and other Supervisory Staff, acting under color of law, as a matter of custom, practice, or policy, failed to maintain adequate and

22

proper training for correctional officers necessary to educate the officer as the to the constitutional rights of prisoners; specifically, to prevent the consistent and systematic use of harassment and assault; and to prevent and report guard/prisoner rape.

94.     Warden Hughes, and other Supervisory Staff, knew of the previous conduct of Officer Ewell in regards to his sexual improprieties, but took no steps to train or supervise, reprimand, or discourage their unlawful use of authority.

95.     Warden Hughes, and other Supervisory Staff, knew that the policy regarding supervision and discipline of officers who violated the civil rights of the prisoners was so inadequate that it was obvious that a failure to correct it would result in further incidents of dangerous and lawless conduct perpetrated by its staff.

96.     Further, Warden Hughes, and other Supervisory Staff, took no action to insure that rapes and assaults would be avoided.  They had a legal obligation and the actual ability to supervise and control Officer Ewell and other CDC officers, yet failed to take steps to do so; in fact, Defendants unilaterally created an environment unsafe for its prisoners by re-assigning Officer Ewell his own unit at CIW *after* knowing he had previously been found to sexually assault a female corrections officer and knowing there were no internal safeguards to supervise Officer Ewell.

97.     These failures were done with deliberate indifference to the constitutional rights of Plaintiff and other prisoners.

98.     Under the color of law, Defendants deliberately failed to supervise, promulgate, and enforce produces and policies for the prevention of lawless conduct on the part of its officers.

99.     Defendants' deliberately indifferent failure to train, supervise, and control Officer Ewell was a substantial factor causing Dee's injuries and damages.

100.    As a direct and proximate result of Warden Hughes and other DOE officials' inaction, Dee suffered physical trauma, emotional trauma, humiliation, fear, embarrassment, and anger.

101.   Dee also requests punitive damages be awarded against Warden Hughes and other DOE officials for their unconscionable and deliberate indifference to the safety of their inmates; specifically, for being a substantial factor in the cause of Dee's rapes and assaults.

102.   The injuries described herein were directly caused by these policies and customs, or lack thereof, as these were so closely related to the injuries suffered as to be considered the "moving force" behind the injuries and deprivations alleged herein.

103.   In doing the acts and/or omissions herein alleged, the Defendants acted with malice and deliberate indifference which caused the unnecessary infliction of pain and physical injury on Plaintiff.  The actions and inactions of the Defendants resulted in the violation of Dee's rights under the Eighth Amendment of the United States Constitution.

104.   The aforementioned acts and/or omissions of defendants in violating Plaintiff's civil rights were the direct and proximate result of policies, procedures, and practices/customs of Defendants as alleged herein.

**FOURTH CAUSE OF ACTION**

**42 U.S.C Section 1983 – 8th Amendment Cruel and Unusual Punishment**

**[Against Warden Hughes in Her Individual Capacity, and DOES 1-50 –**

**Ratification]**

105.   Plaintiff realleges and incorporates by reference all paragraphs stated above as though fully set forth herein.

106.   Warden Hughes, and other Supervisory Staff, under the color of law, having previous knowledge that Officer Ewell had a history of sexually assaulting women, failed to discipline, train, or supervise Officer Ewell after re-assigning him his own unit at CIW, thereby making the deliberate choice to approve Officer Ewell's conduct.

/ / /

24

107.   To make matters worse, Warden Hughes, and other Supervisory Staff, knew her facility and policies would not adequately account for Officer Ewell's conduct so as to prevent the foreseeable assaults that did eventually occur.  For this complete disregard and ratification of conduct, Warden Hughes and other DOE officials are liable for Dee's violations.

108.   This lack of action promoted and enabled Officer Ewell's rapes and assaults to continue, thereby ratifying his conduct and the conduct of other CDC officers.

109.   Warden Hughes and other DOE officials, are the policy makers and as such are responsible for authorizing and condoning Officer Ewell's prior conduct so as to signal that his inappropriate sexual assaults would go unmonitored and undisciplined.

110.   The injuries described herein were directly caused by these policies and customs, or lack thereof, as these were so closely related to the injuries suffered as to be considered the "moving force" behind the injuries and deprivations alleged herein.

111.   In doing the acts and/or omissions herein alleged, the Defendants acted with malice and deliberate indifference which caused the unnecessary infliction of pain and physical injury on Plaintiff.  The actions and inactions of the Defendants resulted in the violation of her rights under the Eighth Amendment of the United States Constitution.

112.   The aforementioned acts and/or omissions of Defendants in violating Plaintiff's civil rights were the direct and proximate result of Defendants' ratification by way of failing to supervise and monitor Officer Ewell, as alleged herein.

/ / /

/ / /

/ / /

FIRST AMENDED COMPLAINT          CASE NO. 16-cv-01589-ODW-DTB

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.      For compensatory, general, and special damages against each Defendant, jointly and severally, in an amount according to proof;

2.      For punitive and exemplary damages against each individually named Defendant in their individual capacity in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

3.      For costs and reasonable attorney's fees pursuant to 42 U.S.C. section 1988, and as otherwise authorized by statute or law; and

4.      For such other relief, including injunctive and/or declaratory relief, as the Court may deem just and proper.

## REQUEST FOR JURY

Plaintiff hereby requests a jury trial in this action.

Respectfully submitted,

**MORRIS LAW FIRM, APC**


Dated:  August 15, 2016          by:   */s/ Christopher S. Morris*
                                 Christopher S. Morris, Esq.
                                 cmorris@morrislawfirmapc.com
                                 Attorneys for Plaintiff DeETTA WILLIAMS

FIRST AMENDED COMPLAINT          CASE NO. 16-cv-01589-ODW-DTB